UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Jason Defina**

   **v.**                                    Case No. 10-cv-372-PB
                                         Opinion No. 2012 DNH 70
**Town of Hooksett, et al.**


**MEMORANDUM AND ORDER**

Jason Defina sued the Town of Hooksett, the Hooksett Police Commission, and Police Chief Stephen Agrafiotis alleging constitutional and state law claims arising from his termination from the Hooksett Police Department. Agrafiotis moves to dismiss two of Defina's claims against him: violation of his due process rights under 42 U.S.C. § 1983 and wrongful termination. Defina objects. In this Memorandum and Order, I grant Agrafiotis's motion to dismiss.


**I.   BACKGROUND**[1]

Defina was hired as a patrolman for the Hooksett Police Department ("HPD") on July 6, 1999. He worked at the HPD for the next five and a half years without incident as a pistol,

---

[1] The background is taken from the Amended Complaint (Doc. No. 21) construed under the Rule 12(b)(6) standard.

rifle, and baton instructor, as well as a field training officer for new recruits.

On January 10, 2005, Defina and Sergeant Greg Martakos met with Police Commissioner Richard Bairham to discuss "abusive" HPD practices.  Those practices included the use of internal investigations to intimidate officers who were critical of Agrafiotis and various "preferential and vindictive personnel practices."  In addition, Defina and Martakos expressed their concern regarding Agrafiotis's mental stability and referenced a specific incident involving a civilian employee where Agrafiotis improperly reached for his weapon.  Another Commissioner, David Gagnon, requested that Defina and Martakos put their concerns in writing.

On January 17, Defina and Martakos filed a written complaint against Agrafiotis on behalf of themselves and certain other officers and civilian employees.  The next day, the Commission voted to place Agrafiotis on leave.

The Commission appointed an outside investigator, Gerald J. Hayes, to look into the complaints against Agrafiotis and designated Defina as the liaison with Hayes.  Defina acted as the liaison for the duration of the investigation but complained

2

to the Commission that it had improperly interfered with the investigation by prohibiting Hayes from interviewing former HPD employees. On March 28, the Commission sent a memorandum to the HPD stating that based upon Hayes's investigation, Agrafiotis was being reinstated as chief of the department.

Over the next few years, Agrafiotis engaged in a pattern of retaliation and harassment against Defina for initiating the complaint. The retaliatory actions included bringing false disciplinary charges, manipulating disciplinary investigations in order to secure findings of misconduct, influencing other officers to prepare false and negative personnel evaluations, and denying Defina promotional opportunities.

In April 2008, Defina was assigned to serve as the School Resource Officer ("SRO") for the Hooksett School District. In October 2008, Agrafiotis directed Defina to reduce the number of hours he spent on his SRO duties to two hours each day. Maura Ouellette, the chair of the Hooksett School Board, sent a letter to a local newspaper, the Hooksett Banner, discussing and complaining about the HPD's decision to reduce Defina's SRO hours. Shortly thereafter, an article appeared in the Hooksett Banner criticizing the reduction of hours.

Agrafiotis directed Defina to contact the author of the article to respond to the criticisms. Defina attempted but failed to contact the author and was disciplined.

On November 14, 2008, on Defina's day off, Agrafiotis directed Defina to come to the Hooksett police station and draft a report addressing the issues in Ouellette's letter and the newspaper article. Defina drafted a report that Agrafiotis deemed to be unsatisfactory. Thereafter, other officers in the HPD prepared a report for Defina, and Defina reluctantly signed his name to it despite believing it to be inaccurate.

In the following months, Agrafiotis continued to take retaliatory actions against Defina, including instituting numerous disciplinary actions and removing him from his SRO position. Although Defina had received positive daily evaluations from his supervisor, the Commission voted to terminate Defina on September 8, 2009, for unsatisfactory performance. The Commission did not afford Defina a hearing before the termination vote.

## II.  **STANDARD OF REVIEW**

In considering a motion to dismiss under Federal Rule of

4

Civil Procedure 12(b)(6), I "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002).  The plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citations omitted).

### III.  ANALYSIS

Agrafiotis moves to dismiss two of the claims against him: a procedural due process claim brought under Section 1983 and a wrongful termination claim.  I address each claim in turn.

### A. **Procedural Due Process**

Defina alleges in Count II that defendants, including Agrafiotis, deprived him of his protected property interest in his continued employment with the HPD without constitutionally adequate process. Agrafiotis argues that he did not violate Defina's due process rights because he had no authority, and was not involved in the decision, to terminate Defina's employment.

To establish a procedural due process claim, a plaintiff in Defina's position must show that defendants deprived him of a protected liberty or property interest without constitutionally adequate process. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006); see Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008). Thus, "to determine whether due process requirements apply in the first place, we must look . . . to the nature of the interest at stake." Bd. of Regents v. Roth, 408 U.S. 564, 570-71 (1972). If the plaintiff adequately alleges a protected interest, "the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Defina contends that he had a protected property interest in his continued employment with the HPD, which was established by New Hampshire Revised Statutes Annotated § 105-C:4. Section

6

105-C:4 provides:

> It shall be the duty of the police commissioners to appoint such police personnel, including police officers, staff, constables and superior officers, as they deem necessary and to fix such persons' compensation.  The commissioners shall make and enforce all rules necessary for the operation of the police force in the manner most beneficial to the public interest.  The commissioners may at any time remove police personnel for just cause and after a hearing satisfying the requirements of due process, which cause shall be specified in an order of removal except that special police officers appointed and designated as such shall serve at the pleasure of the commission and may be removed for other than just cause.

Agrafiotis does not address whether the statute created a constitutionally protected property interest for Defina or, if it did, whether Defina was denied adequate due process.  Rather, he argues that the claim against him fails because he is not a police commissioner, and does not have any authority to remove police personnel under the statute.  Defina concedes that Agrafiotis did not have a statutory responsibility to provide him with due process but argues that Agrafiotis was generally involved in Defina's termination and misused his public authority generally.  Defina contends that these factual allegations are sufficient to survive a motion to dismiss on his due process claim.

7

Assuming without deciding that Section 104-C:4 establishes a constitutionally protected property interest in employment that requires due process before an officer can be terminated, Defina has failed to allege facts supporting a claim that Agrafiotis terminated him.  To adequately allege that Agrafiotis deprived him of his due process rights, Defina must allege facts that "show 'that [Agrafiotis's] conduct was the cause in fact of the alleged deprivation.'" Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (quoting Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997)).  Thus, Defina must allege facts to show that Agrafiotis "was personally responsible for the deprivation of a constitutional right." Johnson v. Snyder, 444 F.3d 579, 583 (7th Cir. 2006) (internal quotation marks and citation omitted); see also Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989).

   Here, Section 104-C:4 applies to police commissioners, not police chiefs such as Agrafiotis.  Although Defina contends that Agrafiotis's conduct contributed to his termination, he does not allege facts that suggest that Agrafiotis had the authority to terminate his employment, influenced the Commission's decision to terminate his employment, or was in any way involved in the

8

denial of his right to a hearing.  See Gagliardi, 513 F.3d at 309 ("[N]either Mayor Sullivan nor any other Lawrence official was responsible for the decision to decertify the Board, and they accordingly had no duty to provide Gagliardi with notice or an opportunity to be heard.").  Therefore, Defina has failed to state a plausible claim for relief for a due process violation against Agrafiotis.

**B.    Wrongful Termination**

Defina alleges in Count V that defendants terminated him in bad faith for performing acts that public policy would encourage, which include his participation in the investigation into Agrafiotis's improper actions and his "unwillingness to communicate misleading opinions to the Hooksett Banner."  Am. Compl. ¶ 73 (Doc. No. 21).  Agrafiotis argues that the wrongful termination claim against him should be dismissed because he cannot be found liable for wrongful termination, as he was not Defina's employer.

New Hampshire recognizes a claim for wrongful termination when an employee alleges facts showing that "(1) his termination was motivated by bad faith, retaliation or malice; and (2) that he was terminated for performing an act that public policy would

9

encourage or for refusing to do something that public policy would condemn." MacKenzie v. Linehan, 158 N.H. 476, 480 (2009) (citing Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 248 (2006)); see also Short v. Sch. Admin. Unit No. 16, 136 N.H. 76, 84 (1992). "The public policy contravened by the wrongful discharge can be based on statutory or nonstatutory policy." Cilley v. N.H. Ball Bearings, Inc., 128 N.H. 401, 406 (1986) (internal citation omitted).

Assuming without deciding that Defina has alleged facts to support a claim for wrongful termination against the other defendants, his claim against Agrafiotis must be dismissed. Defina does not allege that Agrafiotis was his employer and, as discussed above, Section 105-C:4 provides that the police commissioners, and not Agrafiotis, have the authority to terminate an officer.

Defina argues that under New Hampshire law a wrongful termination claim is based in tort, not contract, and that therefore the claim is not limited to employers. Defina is correct that under New Hampshire law, wrongful termination is a cause of action in tort, not contract. See Porter v. City of Manchester, 151 N.H. 30, 39 (2004). Defina, however, does not

10

explain how the tort theory of liability underlying a wrongful termination claim expands liability to non-employers.  Nor has he attempted to distinguish my prior decision in Bonczar v. Suburban Propane Gas Corp., No. 94-68-B, slip op. at 17 (D.N.H. Sept. 30, 1996), in which I determined that a wrongful termination claim cannot be maintained against a person who was not the plaintiff's employer.

Defina argues in the alternative that he can maintain a wrongful termination claim against Agrafiotis because he "alleges acts by [Agrafiotis] amounting to constructive termination."  Pl. Obj. 2-3, Doc. No. 25-1.  A constructive termination "occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign."  Karch v. BayBank FSB, 147 N.H. 525, 536 (2002) (internal quotation marks and citation omitted).  Because Agrafiotis was not Defina's employer, he may not maintain a wrongful termination claim against him, regardless of whether the claim is based on actual termination or constructive termination.  Accordingly, I grant Agrafiotis's motion to dismiss the wrongful termination claim.

11

## IV. <u>CONCLUSION</u>

For the reasons stated above, I grant Agrafiotis's motion to dismiss Defina's due process claim (Count II) and wrongful termination claim (Count V) (Doc. No. 24).

SO ORDERED.

                                        /s/Paul Barbadoro  
                                        Paul Barbadoro  
                                        United States District Judge

April 10, 2012

cc:   H. Jonathan Mayer, Esq.  
      Eric G. Moskowitz, Esq.  
      Charles P. Bauer, Esq.  
      Daniel J. Mullen, Esq.